Commonwealth v. Louisville Property Co. et al.

CASE 90.—ACTION BY THE COMMONWEALTH AGAINST THE LOUISVILLE PROPERTY COMPANY AND ANOTH- ER. FROM A JUDGMENT SUSTAINING A DEMUR- RER TO THE PETITION, COMPLAINANT APPEALS. —June 18, 1909.

## Commonwealth v. Louisville Property Co., &c.

Appeal from Bell Circuit Court.

From a judgment sustaining a demurrer to the petition, complainant appeals.—Affirmed.

1.  Escheat—Title to Real Property.—Where a railroad company provided the money to purchase land not necessary for its legitimate business, and caused the title to be conveyed to a dummy corporation created at its instance, whether the stock- holders thereof and those of the railroad company were the same or not, if the railroad company in reality held the title, the land was subject to escheat, under Const. sec. 192, and Ky. St. 1909, sec. 567 (Russell's St. sec. 2153), pro- viding that no corporation shall hold or own real estate not necessary to its legitimate business for more than five years under penalty of escheat.

2.  Corporations—Charter—Right to Hold Land.—A corporation authorized to "purchase, hold, lease, sell, convey, and other- wise use, manage, and dispose" of real and personal property wherever situated in the United States was empowered to hold
    vol. 139—44

real estate for a reasonable time only, and not indefinitely, in violation of Const. sec. 192, and Ky. St. 1909, sec. 567.

3.  Escheat—Corporate Powers—Holding Real Estate—Dummy Corporation.—Where a railroad company organized a dummy corporation to hold lands belonging to it, to evade Const. sec. 192, and Ky. St. 1909, sec. 567, prohibiting corporations, on penalty of escheat, from holding real property not necessary to their legitimate business for more than five years, the powers of such dummy corporation were immaterial, so far as the State's right to escheat the property was concerned.

4.  Escheat—Right of Corporation to Hold Real Estate—Statutes.—Ky. St. 1909, sec. 567, providing that no corporation shall hold or own real estate not necessary for its legitimate business for more than five years under penalty of escheat, deals with a situation existing five years next preceding the time the statute is invoked, and has no reference to the future.

5.  Escheat—Power of Corporations to Hold Real Estate—Petition.—Where the Commonwealth claimed that a railroad company had incorporated a holding company, to which certain real estate had been conveyed which was not necessary for the railroad company's business, in violation of Ky. St. 1909, sec. 567, prohibiting a corporation from holding such real-estate for more than five years under penalty of escheat, a petition for escheat, alleging that the property was not necessary at the time the petition was filed, but failing to allege that it was not necessary at any other time, nor that the railroad company had for five years held the property, either in its own name or in the name of the holding company, and that the property was not necessary for its legitimate business for that period, was fatally defective.

A. G. PATTERSON, E. B. BEARD, PEARCE & MARSHALL, GEO. L. PICKETT and PICKETT & BARRICKMAN for appellant.

HENRY L. STONE, CHAS. W. METCALF, G. W. ALCORN, BENJAMIN D. WARFIELD and WILLIAM AYRES for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

This action was instituted against two corporations to escheat certain unimproved land in Bell

county, Ky., because the corporations had owned the lands for more than five years, when during the whole of that time the ownership of that property was neither proper nor necessary for carrying on the legitimate business of the corporations, or of either of them. The corporations sued are the Louisville Property Company and the Louisville & Nashville Railroad Company. The lands were conveyed to the corporation the Louisville Property Company during the year of 1902. The allegations of the petition, to which a general demurrer was sustained, and the petition dismissed in consequence, are as follows, so far as it states the facts relied on against the Louisville Property Company: ''The plaintiff, the commonwealth of Kentucky, further says that the said defendant Louisville Property Company has been the owner and in possession of the said land embraced by the said deeds to it since the respective dates of said deeds conveying said property to it, and for a period of more than five years before the institution of this action and the filing of this petition. Plaintiff further says that none of said lots or tracts of land are used by said corporation in connection with the legitimate business authorized under its charter, nor is any of said lots or parcels of land necessary or proper for the carrying on of the legitimate business of said corporation, and same having been held by said Louisville Property Company for more than five years continuously last past, each and every one of said lots, parcels, or tracts of land has escheated and reverted to the state of Kentucky, and that the said state of Kentucky is now entitled to the possession of same.'' It was also alleged that the property company was organized and empowered to buy, sell, and lease land. In an amended petition,

supplementing the averments of the original peti-
tion, is the attempt to state the cause of action
against the railroad company. The allegation is
that the railroad company furnished the money with
which to buy the land, that it really owns the land,
that the Louisville Property Company is ''a hold-
ing corporation'' for the railroad company, that
''some or a majority of the stock'' of the Louisville
Property Company is owned by persons who are also
stockholders of the Louisville & Nashville Railroad
Company, and that the property is not proper or
necessary for the use of the railroad company.

The provisions of law under which the petition
was framed are section 192 of the Constitution and
section 567, Ky. St. The section of the Constitu-
tion is: ''No corporation shall engage in busi-
ness other than that expressly authorized by its
charter, or the law under which it may have been
or hereafter may be organized nor shall it hold
any real estate, except such as may be proper
and necessary for carrying on its legitimate busi-
ness, for a longer period than five years, under
penalty of escheat.'' The section of the statute is as
follows: ''Sec. 567. No corporation shall engage
in business other than that expressly authorized by
its articles of incorporation or amendments thereto;
nor shall any corporation, directly or indirectly,
engage in or carry on in any way the business of
banking, or insurance of any kind, unless it has be-
come organized under the laws relating to banking
and insurance; nor shall any corporation hold or own
any real estate, except such as may be necessary and
proper for carrying on its legitimate business, for
a longer period than five years under penalty of
escheat.'' We hold that if the fact is that the Louis-

ville & Nashville Railroad Company provided the money to buy the land, and caused the title to be taken to a dummy corporation created at the instance of the railroad company, whether its stock-holders and those of the railroad company were the same or not, so that the railroad company might in reality hold the title to the land in spite of the Constitution and statute, the land would be subject to escheat. Corporations may endure always. The public policy of this state, declared by the section of the Constitution quoted, is to prevent the title to real estate being taken to corporations in this state, and held interminably, when not necessary and proper for the carrying on of the legitimate business which the corporation was specifically authorized by this state to do. What is prohibited cannot be done by indirection, any more than it could have been by direct violation of the Constitution.

It is argued that, as the Louisville Property Company was authorized by its charter to "purchase, hold, lease, sell, convey, and otherwise use, manage and dispose of all kinds of real or personal or mixed property wherever situated in the United States of America," its holding the property for longer than five years cannot be held to be either improper or unnecessary to the carrying on of its legitimate business. We construe the charter of that company to mean that it was empowered to deal in real estate. That means to buy and sell real estate, and to hold it for a reasonable time until it can sell it. If it had been the purpose of the corporation only to buy and "hold" lands, and if that purpose was not an infringement of the Constitution, then it would be possible for a corporation to own all the land in course of time, and to hold it always. That was the

very thing the Constitution was aiming to prevent. We will not construe an open expression in a corporate charter so as to make it conflict with the Constitution, when another construction in harmony with the Constitution is susceptible from the language of the charter. If the Louisville & Nashville Railroad Company does actually own the land, as charged, and if it is not necessary and proper for the conduct of its legitimate business, then it is immaterial what the powers expressed in the charter of the property company may be.

Appellee railroad company argues that the expression in section 192 of the Constitution, "as may be proper and necessary," is used in reference to the future; that, if it now appears that it may be necessary in the future for the railroad company to own these coal and timber lands, the Constitution does not forbid it. But the section is dealing with a situation five years next preceding the time it may be invoked. It has no reference to the future.

The petition, however, is fatally defective. It does not allege that the Louisville & Nashville Railroad Company has for five years held, in its name or in that of its agent, the "holding" company, the title to the land, when for that time it was not proper and necessary for the railroad company to carry on its legitimate business. The allegation is that it is not necessary now, not that it was not necessary and proper two years ago, or other time than at the present. The circuit court properly sustained the demurrer.

Judgment affirmed.

RESPONSE TO PETITION FOR REHEARING BY JUDGE
O'REAR.

Counsel for appellee urge that we withdraw all
that part of the opinion in this case which discusses
the effect of a holding by a dummy corporation
created, financed, and officered by another, of land
held in violation of the Constitution of this State.
Also, what was said in the opinion construing the
charter of the holding company. It is argued that
this matter, in view of the conclusion reached by the
court, was obiter dictum. We do not so understand it.
The question was, what was necessary to be stated
under the section of the constitution and the statute
involved and cited, to support the cause of action
asserted. To decide whether the petition before us
was sufficient it was necessary to state what was
required to be set out. In doing so, the purpose of
the law must be shown, as well as the acts neces-
sary to bring the case within its meaning. Then the
acts charged must be measured by the standard,
determined as the proper one. Of a petition upon
a note, its sufficiency could not be well decided and
explained unless it was said what would be the neces-
sary allegations to have been made. Then if the
facts alleged did not satisfy the standard of plead-
ing, it would follow that the petition was bad. All
that was said in the opinion was germane to the
discussion and decision of the point involved, how-
ever narrow it finally became because of the paucity
of the allegations of the pleading. The court is
required to deliver written opinions. Here the suf-
ficiency of a petition drawn under the statute is
involved. We decided that the petition was defec-
tive. We are required to state the reason or rea-
sons why it was defective. To do so, we must inter-

pret the statute so as to learn and to state its mean-
ing, and must then explain what is necessary to bring
the case within the statute so expounded. If we con-
clude that the petition is bad, all that has been said
leading up to that conclusion is not dictum because
the state of facts necessary to have been alleged to
make a good petition are shown not to have been
stated. The matter objected to is not obiter dictum.

The petition for rehearing also says:

"We also think that the court is in error in deny-
ing, if that is what it meant to do, the right of a cor-
poration to hold land longer than five years without
penalty of escheat, where the lands have not within
that time been used in the business of the corpora-
tion, even though there is a reasonable expectation
that the lands may be necessary for use in the busi-
ness of the corporation in the future."

The complaint doubtless rests upon the clause in
the opinion saying:

"The section is dealing with a situation five years
next preceding the time it may be invoked. It has
no reference to the future."

It is true that the sections deal with a past con-
dition. But that does not mean that the future was
eliminated from the consideration. It may well be
the contrary. If the corporation acquires land
"necessary and proper for carrying on its legitimate
business," if necessary and proper when acquired
or at any time within five years after it is acquired,
its future use and availability may be considered in
determining whether the quantity acquired, and the
time of bringing it into actual use make it "proper
and necessary for carrying on the legitimate busi-
ness" of the corporation. It is not essential to the
validity of the holding that the land be imme-

diately "used" by the corporation. It must only
be "necessary" and "proper" for carrying on the
corporation's legitimate business. In a certain
sense whatever property a corporation may own
may be necessary to enable it to maintain itself.
But the sense here is narrower than that. It
restricts such holding of land to such as is proper,
that is, suitable in kind and location, and as may be
required, to enable it to engage in the business which
its charter expressly allows. A coal mining com-
pany may therefore own coal lands, although not
mining every part of them at the time, because coal
lands are both necessary and proper for carrying on
its legitimate business. So, a corporation created to
manufacture lumber may own timber lands in excess
of the quantity then being cut from. · But a railroad
corporation has not the right, therefore it is not
proper, for it to own vast bodies of coal and timber
land, although it uses both coal and timber in its busi-
ness—one for fuel, the other for crossties and· car
building. Coal and timber may be said to be neces-
sary and proper for its use, but land on which there
are timber and coal is not necessary. So, it may be
conceded that a railroad corporation might own a
coal mine for its immediate use, or growing timber,
but it has not the right to engage commercially in
mining and selling coal, or manufacturing lumber.
If all the railroad corporations should determine
that all the coal lands of this state were necessary,
that is, would at some time in the future be neces-
sary, to enable them to carry on their business of
operating railroads, it would be possible for these
common carriers, under appellee's version of the con-
stitution, to monopolize not only the coal which they
consumed, but all they carried to the market for

sale—for who can say that all the coal will be more than sufficient to supply all the railroads with fuel for all time? A railroad corporation may sell its coal although it may be deemed necessary and proper for carrying on its business that it be retained. A railroad also uses crude and finished oils, iron and certain machinery. May the railroad therefore acquire unlimited oil wells, iron ore deposits, and foundries, holding them idle until such time as it sees proper to open them to the market? The suggestion, no less than it may own unlimited lands containing coal and timber, mocks the Constitution.

The holding company in this case, as alleged is only a "holding" company. To hold lands interminably is not a business.

The opinion can not be construed as a menace to corporations acquiring land for the business for which they are chartered to do. There is no threat that they must bring all such land into actual use within five years or suffer escheat. The only limit as to the time such corporations may own such lands is the limit in their charters.