## German Insurance Co, v. Commonwealth, For Use, et al.
## Commonwealth, For Use, et al. v. German Insurance Co.

(Decided January 18, 1911.)

### Appeals from Jefferson Circuit Court
### (Chancery Branch, First Division).

1. Escheat.—An action may be maintained under section 2971 of the Kentucky Statutes in the name of the Commonwealth for the benefit of the public schools of the City of Louisville to escheat property that is held by a corporation in violation of law.

2. Contract—Corporation Charter is—Impairment of.—A charter granted by the State to a private corporation is a contract within the meaning of the Federal Constitution, and the State cannot impair its validity or obligations by either constitutional provision or legislative enactments.

3. Contracts—Impairment—Police Power.—The State cannot contract away its police power or its right to abrogate or annul contracts it has made in violation of this power.

4. **Contracts Between State and Corporation—Construction of.**—In a contest between a corporation and the State as to the meaning of its charter contract, the powers of the corporation are to be settled by the contract itself, and it is to be strictly construed against it. Nothing will be assumed in its behalf. If there is doubt, it will be resolved against the grant. If there is uncertainty, it will be construed in favor of the State. If the contract is susceptible of two meanings, that will be adopted which restricts and not enlarges the power granted.

5. **Public Policy of the State.**—It has always been against the public policy of the State to confer upon a corporation the power to hold and own real estate not necessary to enable it to carry on the business for which it was created.

6. **Corporations—Purchase and Holding of Real Estate by.**—A corporation may hold indefinitely such real estate as is necessary to enable it to carry on the business for which it was created, but it cannot hold other real estate for a longer period than five years; if it does, such real estate may be escheated to the State under the authority of section 192 of the Constitution and the statutes made in pursuance thereof.

7. **Corporations—Right of, to Hold Real Estate.**—Under the Constitution and statutes, if a corporation acquires real property in good faith for the purpose of using it to carry on its business, and it holds such property with the intention in good faith of using it for such purpose, and it will be necessary for such use when devoted to it, then it may hold the property for more than five years after its acquisition before it is first applied to the use for which it was purchased and held.

8. **Corporations—Right of, to Hold Real Estate—Construction of Constitution.**—When a corporation acquires real property not necessary and that will not in the reasonable course of events be necessary in the conduct of its business and the property is held for longer than five years, it may be forfeited by the State.

9. **Corporations—Right of, to Hold Real Estate—**Where a corporation is authorized by its charter to advance money on real estate security, it may purchase such property if sold to satisfy its debt, but it cannot hold such property longer than five years unless it is necessary in the conduct of its business.

10. **Estoppel by Conduct of State Officers.**—The State will not be estopped by the laches, or ignorance, or acquiescence of one of its officers or one of its departments from enforcing a legal right expressly conferred by statute, unless it is clear that the officer or department had power to bind the State by his or its acts.

11. **Estoppel—When Conduct of State Officer Will not be.**—Where an Insurance Commissioner was not authorized to bind the State, or to consent that an insurance company might violate the law, the State will not be estopped by his failure to warn an insurance company that it was holding real property in violation of law, in an action by the State to escheat the property.

12. Corporations—Erecting Buildings by.—A corporation in erecting a building for its use may erect a larger one than its present needs require, and rent out that part of it not occupied by it.

JAMES C. POSTON, LAWRENCE S. POSTON and WALLACE A. M'KAY for the Commonwealth of Kentucky.

O. A. WEHLE and WEHLE & WEHLE for the German Insurance Co.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

These two escheat cases involve questions of public interest and grow out of an attempt on the part of the Commonwealth for the benefit of the Louisville School Board to forfeit certain real estate owned by the insurance company, upon the ground that it had owned and held the property for longer than five years in violation of the Constitution and statutes made in pursuance thereof.

The facts are these: The German Insurance Company was incorporated by a special act of the General Assembly of this State in 1854, and under this charter, subject to modifications made by the general laws of the State, it has continuously carried on the business of insurance. In 1897 the company became the purchaser of certain lots in the city of Louisville described in the record as lots Nos. 1, 2, 3, 4 and 6. Some of these lots are unimproved, others have cheap buildings upon them, they are worth about $8,000, and have never been at any time occupied or used by the insurance company in the conduct of its business, which it has always carried on in a building situated some two miles from the location of these lots.

In 1895, and for many years previous thereto, and when this action was instituted, the insurance company and the German Insurance Bank, an institution owned and officered by practically the same persons who control and manage the insurance company, occupied together a building on the corner of Second and Market streets in Louisville, which was owned by the bank. In 1895 the insurance company purchased the property known in the record as lot No. 5, for $18,500. This lot is situated on Second street, immediately adjoining the building owned by the bank and occupied by it and the insurance company, being only separated from the bank building by a wall. There is no opening from the bank building into the building on lot No. 5 and this building has never been

used or occupied by the bank or the insurance company, but has always been rented out by the insurance company.

For answer and defense to this suit, which was brought in 1908, the company in one paragraph set up that it had been compelled to buy lots Nos. 1, 2, 3, 4 and 6 under judicial proceedings instituted in its behalf for the purpose of enforcing the collection of mortgage debts owned by it, which were a lien upon these lots. And that it only purchased these lots in an effort to save its debt, and that although it had made diligent efforts so to do, it had been unable to sell these lots or any of them at an adequate or reasonable price or a price that would protect it from loss, and for this reason only it had and was holding them, and intended to and would sell them when it could obtain a fair price. That having acquired the lots in this way, its holding for the purpose and with the intention stated was not in violation of the Constitution or statutes.

In another paragraph, dealing with lot No. 5, it averred that the building on Market street in which the business of the bank and the insurance company was conducted, had become inadequate for the increasing demands of the two corporations, and that in 1895 the insurance company purchased the adjoining lot with the intention and for the purpose of erecting upon it an office building for the company but that, soon after its purchase of this lot, the bank purchased a lot fronting on Market street, adjoining its building, and erected on it a building to be and which was used in conection with its other building, and by the acquisition of this new building sufficient room was obtained to accommodate the present business of both corporations, and consequently, it became unnecessary for the time being for the insurance company to erect on its own lot a building to be used by it in the conduct of its business. It further averred that it had never abandoned the intention of erecting its own building upon the lot bought, and that it intended to, and would be obliged, in the near future to do so, as the business of the corporations was increasing to such an extent that other accommodations must soon be obtained by it. And so its holding of this lot under these circumstances was permitted by the Constitution.

In another paragraph it averred that under its charter of 1854 it was empowered to lend its money upon real estate security and "to hold, acquire, use and en-

joy, or sell, transfer, convey by deed or otherwise, any real, personal or mixed estate needful to transact and manage the business of insurance," and that as its right to hold real property under its charter was not limited to five years, this charter right could not be abrogated or impaired by subsequent legislation or constitutional enactment.

In other paragraphs it presented other defenses that will be noticed in the opinion.

Upon hearing the case, the chancellor, now Judge Miller of this court, adjudged that lots Nos. 1, 2, 3, 4 and 6 had escheated to the Commonwealth, but that lot No. 5 had not. From this judgment, both parties have appealed.

The Commonwealth finds authority to support the action brought by it in section 2971 of the Kentucky Statutes, reading:

"So much real, personal or mixed property in the city, which, from alienage, defect of heirs, failure of kindred, or other causes, shall escheat to the Commonwealth of Kentucky, shall vest in the board for the use and benefit of the schools. Said board may, in the name of the Commonwealth, for the use and benefit of the public schools of the city, by its president, or other officer to be designated by it, enter upon and take possession of said property, or sue for and recover the same by an action at law or in equity, and without office found. * * *"

And relies for recovery upon section 192 of the Constitution, reading:

"No corporation shall engage in business other than that expressly authorized by its charter, or the law under which it may have been or hereafter may be organized, nor shall it hold any real estate, except such as may be proper and necessary for carrying on its legitimate business, for a longer period than five years, under penalty of escheat."

And section 567 of the Kentucky Statutes, providing: "No corporation shall engage in business other than that expressly authorized by its articles of incorporation or amendments thereto; nor shall any corporation, directly or indirectly, engage in or carry on in any way the business of banking, or insurance of any kind, unless it has become organized under the laws relating to banking and insurance; nor shall any corporation hold or own any real estate, except such as may be necessary and proper for carrying on its legitimate business, for

a longer period than five years under penalty of escheat.''

We will first take up the question raised by counsel that to take this property under the law of escheat would be a violation of its charter rights. It must be conceded at the outset that if this contention is well founded the case for the State must fail, as it is well established that the State cannot by either constitutional provision or legislative enactment impair 'the obligations of a contract. It is equally well settled that a charter granted by the State is a contract between the State and the parties to whom it is granted. These principles were settled by the Supreme Court of the United States in the early and celebrated case of the Trustees of Darthmouth College v. Woodward, 4 Wheaton, 519, 4 L. Ed., 629; and have since been followed by all the courts of this country, and are now firmly fixed as a fundamental part of its jurisprudence. Planters Bank v. Sharp, 6 Howard (U. S.), 301, 12 L. Ed., 447; Mississippi & Missouri R. Co. v. McClure, 10 Wallace (U. S.), 511, 19 L. Ed., 997; Bier v. McGehee, 148 U. S., 137, 37 L. Ed., 397; Lapsley v. Brashears, 4 Litt., 46; Berry v. Ransdall, 4 Met., 292; Hamilton v. Keith, 5 Bush, 458.

We have in section 19 of the Constitution of the State a clause declaring that ''no law impairing the obligation of contract, shall be enacted.'' But, this provision can only be relied upon or be effective when private contracts or legislative enactments of the State are called in question, as it does not and could not apply to changes made in the Constitution of the State, and so, when in the Constitution of the State it is attempted to impair the obligations of a contract to which the State is a party the Constitution of the United States must be invoked to protect the contract, and reliance had on that provision in section 10 declaring that: ''No State shall * * * pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts * * *.'' And it is this provision of the Federal Constitution that the insurance company depends upon to protect from impairment by the Constitution of the State what it insists is a contract between it and the State, and to save its property from forfeiture under the clause of the State Constitution before cited, and the statute made to carry it into effect. It may also be here noted that although the Constitution of the United States forbids any State from impairing by constitution or law the obligations of a contract, there is yet the exceptions to this general rule

that the State cannot contract away its police power or its right to abrogate or annual contracts it has made in contravention of this power. And so, although the State may have entered into a contract that would ordinarily be binding upon it, and beyond its power to impair, it may yet avoid a contract so entered into, if by the contract the State undertook to part with its police power. A full exposition of the extent of the right of the State under this power to impair or annul contracts that it has entered into will be found in Bacon v. Walker, 204 U. S., 311, 51 L. Ed., 499; Chicago, B. & Q. R. Co. v. Illinois, 200 U. S., 561; 50 L. Ed., 596; Holden v. Hardy, 169 U. S., 366, 42 L. Ed., 780; New Orleans Water Co. v. Rivers, 115 U. S., 674, 29 L. Ed., 525; Stone v. State of Mississippi, 101 U. S., 814, 25 L. Ed., 1079. And upon the principle announced in these cases, counsel for the Commonwealth relies, and in argument insists, that even if it should be ruled that the charter of the insurance company conferred upon it the right to hold property not needful for its use for longer than five years, that the grant of this unlimited power did not constitute an inviolable contract upon the part of the State, and under its police power it might at any time withdraw the grant. There is much that might be said in support of this proposition, but we do not deem it necessary in order to sustain the contention of the Commonwealth to rest or attempt to rest upon this ground its right to the relief sought. We think that the case for the Commonwealth may safely and soundly be put upon the ground also relied on by counsel that the charter contract of the company was not impaired by the subsequent constitutional provision or statute before cited. In other words, our opinion is that the provision in the charter relied upon does not confer upon the company the right to hold for a term longer than five years, or indeed for any time, real property not "needful to transact and manage the business of insurance." Of course if this position is well taken, then the argument that an attempt is made to impair its contract must fail. Before taking up this feature of the case, it may be well to notice the rules by which the rights of the corporation to rely upon its charter contract are to be measured in a contest with the State. In the construction of this contract the public is interested. Rights are asserted under it that are deemed inimical to the public good. This being so, no question of the intention of the parties outside of the terms of the contract can be looked to in determining

their rights. The powers of the corporation are to be settled by the contract itself, and it is to be strictly construed against it. No intendment will be taken for granted in its favor, nor will anything be assumed in its behalf. If there is doubt, it will be resolved against the grant. If there is uncertainty, it will be construed in favor of the State. If the contract is susceptible of two meanings, that one will be adopted that restricts and not enlarges the power granted. Northwestern Fertilizing Co. v. Hyde Park, 97 U. S., 659, 21 L. ed., 1036; Stein v. Bienville Water Supply Co., 141 U. S., 67, 35 L. ed., 622; Bighamton Bridge case, 70 U. S., 3, 18 L. ed., 137.

When the charter provision relied on is tested by these established rules, it is not difficult to decide that the corporation was not granted the right to hold any real property not "needful to transact and manage the business of insurance" for any length of time. Under its charter the corporation had the authority to hold such real estate as was "needful to transact and manage the business of insurance," and it has the same right now. Neither the Constitution nor the statute takes from it any authority in this particular that its charter conferred. When the charter was granted it was against the public policy of the State to confer upon a corporation the power to hold and own real estate not needful or necessary to enable it to carry on the business for which it was created, and such a grant of power is against the public policy of the State now except as authorized by the constitution. In this respect there has been no substantial change in the law. The language of the charter is not broader than the language of the Constitution. There is little or no difference between the meaning of the words "needful to transact and manage the business of insurance" and the words "proper and necessary for carrying on the business of insurance." If property is necessary to enable an insurance company to carry on its business, so it is needful in the transaction and management of its business. Possibly some refined distinction might be pointed out between the meaning of the words used in the charter and the words used in the Constitution, but there is no substantial or practical difference between them.

Equally untenable is the argument in reference to lots Nos. 1, 2, 3, 4, and 6, that as the insurance company had the right to lend money upon real estate security, it also had the right to purchase the property upon which it had a lien to save itself from loss, and consequently the

further right to hold the property so purchased until it could dispose of the same without sacrifice. We do not, however, find any grant in the charter authorizing this power, or any clause saving an exception to the rule that it may only hold indefinitely real property needful for its use. The only question then is, was the property needful or necessary in the conduct of its business, or will it be? How it was obtained is not important. It makes no difference whether it was acquired by gift, devise or purchase. Its right to hold is measured by the single inquiry—was or will it be needful or necessary to enable the corporation to carry on its business. That it was not and will not be is fully shown by the agreed facts, setting out that these lots are located more than two miles from the place at which the insurance company intends to and has always carried on and transacted its business. And that in the transaction of its legitimate business an insurance company does not need to own or hold indefinitely any real estate, except the building in which its business is or may be carried on, is not open to doubt. But in making this statement we do not mean to say that an insurance company in the transaction of its business may not own and hold real estate other than its place of business, because both the Constitution of the State and the statute expressly permit an insurance company to own and hold for a period not exceeding five years real property other than that in which its business is conducted. Power to do this is expressly conferred by section 632 of the Kentucky Statutes, reading:

"An insurance company may purchase, own and hold such real estate as is necessary for the convenient transaction of its legitimate business, and, for a period not longer than five years, such other real estate as shall have been mortgaged to it in good faith by way of security for loans previously contracted for money due, or as shall have been conveyed to it in satisfaction of debts previously contracted in the course of its business, or as shall have been purchased at sales upon judgment in its favor."

It will be observed that this section does not enlarge or limit the authority to hold real estate conferred by the Constitution. It merely declares in effect that an insurance company may hold indefinitely such real estate as is necessary for the transaction of its legitimate business, and for a period not longer than five years other real estate acquired in the manner pointed out in the section. Similar provision will be found in section 582 regulating

the holding of real estate by banks, in section 612 regulating the holding of real estate by trust companies, in section 870 relating to the holding of real estate by building and loans associations, and in section 567 regulating the holding of real estate by corporations generally. In other words, the legislature in the enactment of these various statutes authorizing corporations to hold real estate not necessary in the transaction of their business, recognized the fact that a corporation in carrying on its business might find it necessary or advisable to acquire by purchase or otherwise real estate, and so the authority to hold real estate so acquired was expressly conferred—not because the holding of such real estate was necessary to enable the corporation to carry on its business, but because it might often be necessary to protect it from loss. And real estate so acquired, the statute permits the corporation to hold for a period not exceeding five years. If this privilege was not allowed, it would in many instances result in serious loss to corporations. Conferring upon corporations the authority to hold real estate so acquired for five years was a matter of grace. The privilege might have been fixed at two years or denied entirely. We may assume that the legislature fixed the term at five years upon the theory that within five years the corporation would have ample time in which to dispose of property that it acquired by purchase or otherwise to save itself from loss in the conduct of its business.

It is further said that the taking of the property forfeited by the judgment appealed from was without due process of law, and in violation of the Fourteenth Amendment to the Constitution of the United States. These contentions have been adjudicated adversely to the position taken by counsel in Louisville School Board v. King, 127 Ky., 824; Commonwealth v. Louisville Property Co., 121 S. W., 399; Commonwealth v. Thomas, 140 Ky., 789; Commonwealth v. Louisville Property Co., 139 Ky., 689. In these cases the arguments presented by counsel upon this branch of the case were so fully considered that it is not necessary to extend this opinion in reiterating the reasons that influenced the court to reject them. It is sufficient to say that the property was not taken without due process of law, that the taking of it does not violate the Fourteenth Amendment to the Constitution of the United States, and that the State had the power to give to the school board the property taken.

It is also argued that the State is estopped to main-

tain this action by the fact that the Insurance Commissioner examined each year the books and affairs of the company, and that it also reported to the insurance department each year a detailed account of the real estate owned by it showing how and when it was acquired. And it is said that as the insurance department did not question its right to hold this real estate or direct its attention to any statute forbidding it, it was by the action of the insurance department lulled into the belief that it had the legal right to hold this property, and relying upon the conduct of this department it continued to retain the property believing that it had the right to do so. We are not disposed to concede the position of counsel. On the contrary, we believe the correct rule upon this subject to be that the State is not estopped by the laches, or ignorance, or acquiescence of one of its officers or one of its departments, from enforcing a legal right expressly conferred by statute, unless it clearly appears that the officer or department had power to bind the State by his or its acts. During the time that the affairs of the company were being examined by the insurance department, and reports were being made by it, its officers knew or should have known that it was holding lots 1, 2, 3, 4 and 6 in violation of the Constitution as well as the statute, and the failure of the insurance department to direct the attention of its officers to this violation of law will not be permitted to save it from the consequences of its own neglect. The Insurance Commissioner was not authorized to consent that the insurance company might violate the plainly written law of the State or to bind the State by such consent if given. If State officers, where the public interest was concerned, could by the mere failure to point out and direct attention to statutes imposing duties upon corporations or others, or by failure to take appropriate action to correct abuses, defeat the State in the enforcement of its law, or estop it from exacting penalties incurred on account of violations of law, the enforcement and administration of law would depend not upon the statute but the will or inclination or vigilance or negligence, as the case might be, of State officers. In short, the conduct of State officers would take the place of the law. There might, of course, be a case in which an officer would have the power to estop the State as where the officer had authority and discretion to do or not to do a certain thing, and acted upon full information. But, the insurance department had no authority to consent that this corporation might violate the law, nor is there

anything in the record to show that the insurance department understandingly did so.

From what we have said, the conclusion naturally follows that as lots Nos. 1, 2, 3, 4 and 6 were acquired more than five years before the institution of the action, and that at no time within five years was either of them needful or necessary to carry on the business of insurance in the present or in the future, that the State had the right and authority to escheat them.

The remaining question is the right of the State to escheat lot No. 5. It will be observed that the insurance company purchased this lot thirteen years before this suit was brought, and that during this time it had not used or occupied it in the transaction of any of its business. This being so, it is insisted for the Commonwealth that as the constitutional provision is plain and mandatory and the right to escheat this property accrued long before the action was brought, the insurance company cannot interpose any defense that will defeat its forfeiture. While it is argued for the insurance company that it is only such real property as the corporation did not acquire for the purpose of, and that was not necessary for its use in conducting its business, and which it has held for more than five years without the intention of so using it, that becomes subject to escheat. It will at once be noticed that there is a marked distinction between these respective contentions as applied to the facts of this case. If the position of the Commonwealth is correct, then there is no escape from the conclusion that the property must be forfeited. On the other hand, if the Constitution permits a corporation to acquire real property in good faith for the purpose of using it to carry on its business, and to hold such property with the intention in good faith of using it for such purpose, and it will be necessary for such use when devoted to it, then the constitutional provision is satisfied, although it may be more than five years after its acquisition before it is first applied to the use for which it was purchased and held. If this is the proper construction, the time during which the corporation holds real property that is or may be necessary in the conduct of its business without putting it to a proper or necessary use in carrying on its legitimate business, is not the controlling question. The time for which the property is held is not the test of the right to hold it, but it is the purpose for which the property is acquired, and the ever present intention of devoting it to a use that will be proper and necessary in carrying on its legiti-

mate business that fixes the right of the corporation to
hold and denies the right of the Commonwealth to take
during the time it is so held.   Under the facts of this
case, if this view is to prevail, then this lot had not be-
come liable to escheat when the action was brought,
because it was purchased with the intention of erecting
a building in which the corporation might carry on its
business, and it has been at all times held with the pur-
pose of devoting it to this use, although the purpose had
not been carried into execution when this suit was
brought.   We do not agree with counsel for the Common-
wealth that the Constitution means that in every case in
which a corporation has held real property for more
than five years without using it in the conduct of its
business that it thereby becomes subject to escheat with-
out reference to the purpose for which it was acquired
or the intention with which it is held.   We do not think
that a corporation is in all cases to be deprived of its
real property merely because it has owned it for more
than five years, without applying it to some proper or
necessary use in connection with its business.   The pur-
pose of its acquisition, the intention with which it is held,
and the use to which it may be and is designed to be put,
are to be considered in connection with the time of the
holding in determining whether or not the provision of
the Constitution has been violated.   Two things are, we
think, made plain by the legislative and constitutional
history of the State in relation to the holding of real
property by corporations.   One is, that any corporation
may own and hold indefinitely so much real estate as is
necessary, or as will be necessary in the reasonable
course of events, to enable it to carry on the business for
which it was organized, and the other is that it shall
not own or hold more than is or will be necessary for
this purpose.   Of course, every corporation should have
the right to own a home, and consequently the right to
acquire property for this purpose has never been and
could not be in reason denied.   Then too, there are cor-
porations, such as railroad companies, and coal and
timber companies, that in the necessary conduct of their
business must own more than a home, and it is essen-
tial to the life of these corporations that they should be
permitted to own so much real estate as will enable them
to carry out the purpose of their creation and existence.
In other words, every business corporation may own or
hold such real estate, whether it be much or little, as will
permit it to carry on the business for which it was organ-

ized. This property, however much it may be, it may hold indefinitely or as long as its corporate existence continues. The Constitution was not intended to and does not deny to any corporation this right. On the contrary it protects it. Commonwealth v. Louisville Property Co., 139 Ky. ——. But when a corporation acquires property not necessary and that will not in the reasonable course of events be necessary in the conduct of its business, then the Constitution which is a part of every charter and must be read into and in connection with it, becomes operative. It is notice to every corporation that when it acquires more real property than is proper or necessary or than will be proper and necessary in the future to carry on its legitimate business, it must dispose of it within five years under penalty of escheat.

A corporation organized for business purposes, and with the power to carry on business enterprises, should be allowed the same liberty within the scope of its charter rights and subject to the limitations imposed by law as would be permitted to an individual engaged in a similar business. It is not the purpose of the Constitution or the law to place in the way of the success of corporations unreasonable obstacles or to hinder them from acting as prudent business men would act under like or similar circumstances. Having this view of the privileges that corporations should enjoy, we do not think the Constitution should be so construed as to deny a corporation the opportunity to look forward to the time when its needs in the conduct of its business will be greater than at present or to deprive it of the right to prepare in advance for conditions that it may reasonably expect will come up in the future. If a corporation was not allowed to carry into execution plans that the good judgment of its officers believe to be essential to its growth and prosperity, it would discourage people from investing their money in these agents that are so indispensable to the business of the State and country. From these considerations and others that might be mentioned, we conclude that the time limitation imposed by the Constitution was not intended to deny a corporation the right in good faith to acquire real estate for a proper and necessary future use in the transaction of its legitimate business, and hold the same for a longer period than five years, if it is so held with the intention in good faith of devoting it to a proper and necessary use and it will be necessary for such purpose when so used. It is

not so much the time for which real estate is held but the
purpose for which it was acquired, the intention with
which it is held, and the use to which it is to be put and
the necessity for this use, that determines the right
of the corporation to hold it. The case we have before
us furnishes a good illustration of the propriety of this
construction. Here, this lot was purchased by the cor-
poration in good faith for the purpose of using it in the
necessary conduct of its business, to-wit: As a home, or
building in which to carry on its business. Circumstances
made it advisable not to devote it to this use, but it was
always held with the good faith intention of so using it
when the demands of business required that it be done
and it would be necessary for such use when devoted to
it. It was not bought or held with any purpose to violate
the law, or with a desire to acquire real property that
was not believed in good faith to be necessary in its
business. To say that under these circumstances this
property must be forfeited would work a great hardship
upon the corporation without any corresponding benefit
in the vindication of the law. As a corporation may for
the purpose and with the intention stated acquire and
hold real estate for a longer time than five years, it would
seem to follow that it may dispose of the property while
it is so held even after the expiration of five years from
its acquisition, if it is deemed best for the corporation to
abandon its purpose to use the property in the transac-
tion of its business. But, however necessary the purpose
for which the property was acquired if the intention to
use it as a proper and necessary means of carrying on
its business is abandoned, and after such abandonment
the property is held by the corporation for five years, it
then becomes subject to escheat the same as if it had
not been purchased for and had never been necessary to
enable the corporation to carry on its businesss. No
evasion or attempted evasion of the Constitution will
be tolerated. Nor will anything less than a purchase in
good faith for the necessary use of the corporation as
well as a holding with the intention in good faith of
devoting it to such use, coupled with the fact that it will
be necessary when so devoted, prevent the operation of
the statute. And we may further add that when prop-
erty has been purchased and held by a corporation for
more than five years, without being actually used in the
proper and necessary transaction of its legitimate busi-
ness, and proceedings have been instituted by the State
to escheat it, the burden will be upon the corporation to

show that it acquired and held the property in the manner and for the purpose and with the intention before indicated. The purpose of the Constitutional provision was to prevent a corporation from holding for longer than five years real estate not necessary or that would not in the future be necessary to carry on its business. This is the leading thought in the Constitution as well as in the statute. When the property is or will be necessary to carry on its business, neither the Constitution nor the statute mean that the mere fact that it is held for longer than five years before being devoted to this use will work a forfeiture. The test as to whether the property is proper and necessary for carrying on the business of the corporation is not necessarily found in the actual use of it by the corporation. It may hold property necessary to carry on its business that is not in actual use in such business. If it is purchased to be used, is held for this purpose, and will be necessary when actually used, then it should be treated as being necessary to carry on the business. The necessity for its actual use need not be a present one. It may arise in the future. If we should adopt the other view, and decide that a corporation could not hold property for longer than five years, although it purchased it with the intention of putting it to a necessary use, and held it for this purpose, and it would be necessary when so used, the result would be that a corporation could never take advantage of a good business opportunity to buy property needed for its use in the future. It could not anticipate and prepare for its future growth and expansion. It would have to wait until the necessity for the actual use arose before buying property, and thus be deprived without good reason of the right to do what a prudent business man would do. We do not think the object of the Constitution requires such a narrow construction. With as much force it might be said that if a corporation can transact its business in a one-story building, it could not erect a two-story building because the second story would not be needed in its business when the building was put up. Or, that a corporation could not buy a building for a home with four rooms, when it only needed two rooms in which to conduct its business. Pertinent to this point, we said in Home Savings Bldg. Ass'n. v. Driver, 129 Ky., 754, where the question arose as to the right of a building and loan association to erect a building of more than sufficient capacity to accommodate its own business and rent out the excess: ·

"There is nothing in the Constitution, charter of the association, or statutes placing any limitation upon the character of a building which a corporation may erect as a home in which to conduct its business. A corporation conducting a business of the character of that in which appellant is' engaged, naturally expects its business to grow and expand from time to time, and, in building a home, it would be exercising but a short-sighted judgment if it did not make provision for the future by building a home large enough to take care of its expanding business, and hence, even if it should build a house larger and roomier than its present needs or interests require, it would be acting clearly within the exercise of its corporate right and power. The limitation which the statute imposes is that it shall not own more real estate than is necessary for the proper conduct of its business, but it does not attempt to place any restriction or limitation upon the right of the corporation or association as to the character of building it shall erect on said real estate; and, while the Constitution and the statutes provide that no corporation shall engage in any business other than that expressly authorized by its charter, we are of opinion that, in renting out the unoccupied and unused portions of the building so erected, the association could not be said to be engaged in any other business than that authorized by its charter. The renting of the unused portions of the building is a mere incident in the conduct of its real business. We would not say that a building association might embark in the business of building houses and renting or leasing them, but there is quite a difference in building or renting a house in which to conduct its own business and leasing the unused portion thereof for the time being, or until such time as they may be needed by the association, and in building houses for the purpose of renting or leasing them. * * * To hold otherwise would be to charge most of the banking institutions, trust companies, and other corporations, * * * doing business in the State, and especially in the large cities, with violating the law; for it is well known that there are few of such institutions that do not, at times, rent out or lease the unneeded portions of the building occupied by them as homes."

There is no difference in substance or results between the right to buy and hold for longer than five years property that will be needed in the future conduct of the business but that is not actually used within five years

and the right to own and hold a three-story building when only one-story is in actual use and the remainder may not be needed for more than five years.

Both propositions fully recognize the right of a corporation to hold and own under certain conditions more property than is in actual use in the necessary conduct of its business, and the right to anticipate and prepare for the demands of the future. We are also satisfied that the conclusion reached in the Driver case, as well as the result in the case before us, is not out of harmony with the spirit or intention of the Constitution or statute. Any other rule than the one we have laid down in these cases would be unwise, as well as impracticable from a business standpoint. Almost every well established and successful business corporation in the State would be in a continual state of apprehension if its holding of real estate was confined under pain of escheat to the quantity in actual and necessary use by it. In many places and in many businesses, corporations could not successfully conduct their affairs if this limitation was placed upon their power to hold such property, and no useful purpose would be accomplished by imposing such restriction. The public policy of the State as expressed in the Constitution and statute does not demand the rigid enforcement of limitations that would obstruct and retard the growth of these enterprises and prevent them from successfully meeting the purposes of their creation. When a corporation is allowed to acquire and hold only so much real property as is necessary to carry on its business, or as in the exercise of a reasonable judgment will be necessary for such purpose in the future, there need be no fear that it will exceed the bounds of its authority by acquiring proprty that the State may forfeit. An instructive case upon the questions we have considered is People v. Pullman Palace Car Co., 175 Ill., 125; 64 L. R. A., 366.

Upon the whole case, we are satisfied with the correctness of the judgment appealed from, and so it is affirmed on both appeals.

Whole court sitting, except Judge Miller.