SLOPE COUNTY, North Dakota, By and Through its BOARD OF COUNTY COMMISSIONERS, Plaintiff and Appellant,

v.

CONSOLIDATION COAL COMPANY, a Delaware Corporation, Defendant and Appellee.

Civ. No. 9545.

Supreme Court of North Dakota.

March 15, 1979.

# 125

Robert A. Keogh, Dickinson, for plaintiff and appellant.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellee; argued by Gary R. Wolberg, Bismarck.

SAND, Justice.

Presented in this case is the issue of whether or not the ownership by Consolidation Coal Company of certain lands in Slope County was reasonably necessary in the conduct of its mining operations. The Slope County District Court found the ownership was within the exception of North Dakota Century Code Ch. 10–06 which prohibits corporate ownership of agricultural lands except as are reasonably necessary in

the conduct of the corporation's business. We affirm.

The land in question, consisting of approximately 720 acres, was acquired by Truax-Traer Coal Company in 1954. In 1962, Traux-Traer merged with Consolidation Coal Company and the real property was subsequently deeded to Consolidation in 1966. Since its acquisition by Consolidation, the property has been leased, with the possible exception of brief periods of time, to area farmers for agricultural purposes.

On 1 November 1976, a complaint was filed by Slope County alleging the land was not reasonably necessary in the conduct of Consolidation's business and in accordance with Ch. 10–06, NDCC, such land should escheat to the county for public sale. A statement of facts was stipulated to by the parties and on 13 July 1978 a judgment was entered dismissing the complaint. Slope County appealed.

Section 10–06–03, NDCC, states in pertinent part:

"Any corporation . . . which . . . has acquired or hereafter shall acquire any rural real estate, used or usable for farming or agriculture . . shall dispose of such real estate, except such as is reasonably necessary in the conduct of its business, within ten years from the date that it was so acquired. During said ten-year period, the corporation may farm and use such lands for agricultural purposes."

Section 10–06–06, NDCC, provides:

"In case any corporation, either domestic or foreign, violates any provision of this chapter or fails, within the time fixed by this chapter, to dispose of any real estate to which it has acquired title and which is not reasonably necessary for the conduct of its business, then title to such real estate shall escheat to the county in which such real estate is situated upon an action instituted by the state's attorney of such county, and such county shall dispose of the land within one year at public auction to the highest bidder, and the proceeds of such sale, after all expenses of such proceedings shall have been paid, shall be paid to the corporation which formerly owned the land."

This court determined in a prior opinion that the phrase "except such as is reasonably necessary in the conduct of its business" in § 10–06–03, NDCC, refers to such real estate as is reasonably necessary for carrying on a business or activity which a corporation was created to carry on. *Asbury Hospital v. Cass County*, 72 N.D. 359, 7 N.W.2d 438 (1943), *affirmed* 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6. Because there is no question that coal mining is the business Consolidation was created to carry on, the issue in this case is whether or not the land located in Slope County and owned by Consolidation Coal is reasonably necessary for the carrying on of that business. Consequently, construction of the term "reasonably necessary" is important in the determination of this case.

■ We conclude the term "reasonably necessary" as used in § 10–06–03, NDCC, refers to that which is useful, convenient, or suitable, and not inconsistent with the legitimate objectives of the corporation. See *Fisher v. Pilcher*, 341 A.2d 713, 717 (Del.Super.1975); *Childers v. Brown*, 81 Or. 1, 158 P. 166, 168 (1916); *Texas Co. v. State*, 198 Okl. 565, 180 P.2d 631, 639 (1947); *State v. International Paper Co.*, 342 P.2d 565, 569 (Okl.1959). The term is to be distinguished from more exacting degrees of necessity, such as absolute, strict, or indispensable. See *Fisher v. Pilcher, supra; State v. International Paper Co., supra.*

Our interpretation of the term "reasonably necessary" in connection with a corporation's right to own property in the conduct of its business is in accordance with at least three North Dakota district court decisions [1] and two opinions of the North Dakota Attorney General issued from 1942 to

---

1. *Nelson County v. J. P. Lamb Land Company* (Nelson County District Court 1965); The *Northwestern Improvement Company v. Morton County* (Morton County District Court 1942); *Baldwin Corporation v. Dickey County* (Dickey County District Court 1942). None of these cases were appealed.

1968.[2] Although not per se authority for purposes of our interpretation of the statute, we note these decisions and opinions have been publicized and relied upon by the citizens of this state. We give considerable weight to the inference that because the North Dakota Legislature has made no change in the statutory language since the decisions and opinions were issued, the interpretation adopted by those decisions and opinions was in harmony with the legislative intent.

The determination of whether or not a particular piece of land is reasonably necessary in the conduct of a corporation's business is not always easily resolved and does not necessarily depend upon the present actual use of the land by the corporation. The business of the corporation will play a dominant role in this determination. If the property is reasonably necessary for the business when acquired, is held for that purpose, and is actually used for the purpose for which it was acquired, then it should be treated as necessary to carry on the business. The necessity for its actual use need not be a present one; it may arise in the future. See *German Insurance Co. v. Commonwealth*, 141 Ky. 606, 133 S.W. 793 (1911).

The parties disagreed if the determination of whether or not land is reasonably necessary in the conduct of a corporation's business is a finding of fact or a conclusion of law. Because this distinction becomes important in determining our standard of review, we find it necessary to examine the question. In reaching our determination, the following statement by the Supreme Court of Oregon in *Henzel v. Cameron*, 228 Or. 452, 463, 365 P.2d 498, 503 (1961), is particularly relevant:

"Whether a finding is a 'finding of fact' or a 'conclusion of law' depends upon whether it is reached by natural reasoning or by fixed rules of law. Where the ultimate conclusion can be arrived at only by applying rules of law the result is a 'conclusion of law.' *Mallinger v. Webster City Oil Co.*, 211 Iowa 847, 234 N.W. 254, 256. A 'finding of fact' is a conclusion drawn by way of reasonable inference from the evidence. *State Acting By and Through Oregon State Board of Higher Education v. Cummings*, 205 Or. 500, 288 P.2d 1036, 1051, 289 P.2d 1083; *Griffith v. Gardner*, 9 Cir., 196 F.2d 698."

Thus, it has been said that if facts are undisputed and only one, if any, inference can reasonably be drawn from those facts, the determination of that inference is a question of law. When, however, facts are not in dispute but permit the drawing of different inferences, the drawing of one such permissible inference is said to be a finding of fact. *Village of Prentice v. Industrial Commission*, 38 Wis.2d 219, 156 N.W.2d 482 (1968). Findings of fact are the realities as disclosed by the evidence as distinguished from their legal effect or consequences. *Cortner v. National Cash Register Co.*, 25 Ohio Misc. 156, 262 N.E.2d 586, 588 (1970).

Except for the rule that the purpose and objective of the corporation must be taken into consideration, there are no rules of law applied in determining if land is reasonably necessary in the conduct of a corporation's business. Such a determination is arrived at only by an examination of evidence, including the inferences drawn therefrom. Accordingly, we conclude such a determination is a finding of fact subject to the "clearly erroneous" rule of review set forth in Rule 52(a), North Dakota Rules of Civil Procedure. See also, *United States v. Yellow Cab Co.*, 338 U.S. 338, 341, 70 S.Ct. 177, 94 L.Ed. 150 (1949) (determinations of design, intent, and motive were findings of fact); *United States v. One 1955 Model Ford 2-Door Coach*, 261 F.2d 125 (5th Cir. 1958) (determination of reasonable time was a finding of fact); *Leavitt v. Scott*, 338 F.2d 749 (10th Cir. 1964) (determination of residence for purposes of diversity of citizenship was finding of fact); *Lakewood Manufacturing Co. v. C. I. R.*, 453 F.2d 451 (6th Cir. 1972) (determination of reasona-

2. Opinions issued October 28, 1968, and May 17, 1960.

bleness of compensation of corporate officers was a finding of fact).

The trial court in this case labeled its determination that the land in question was reasonably necessary in the conduct of Consolidation's business as a conclusion of law. This court has stated in prior opinions, however, that we will recognize and consider findings of fact regardless of the label that may be placed upon them or that they may be denominated by their placement as conclusions of law. *Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978); *Jahner v. Jacob*, 233 N.W.2d 791 (N.D.1975).

Slope County argued that as a matter of law ownership of the land was not reasonably necessary in Consolidation's business of strip mining coal. It stated that there existed means of acquiring the right to extract minerals owned or leased by Consolidation other than through ownership of the surface estate. It pointed out Consolidation is currently mining, or holds the right to mine, coal on property of which it does not own the surface estate. Slope County contended mining without ownership of the surface estate can be accomplished by obtaining either a lease of the surface estate or a statement of consent from the surface owner, or by an order of a district court authorizing the Public Service Commission to issue a permit to surface mine land without the consent of the surface owner.

Slope County's argument, in effect, would prohibit ownership by a corporation of land usable in a corporation's business if there were means of securing possession or use of the property other than through ownership.

Such a result is not the intent of Ch. 10–06, NDCC, because we can think of few, if any, instances where a corporation could not acquire possession or use of property other than through ownership. If the act was intended to prohibit all such corporate ownership of land, there would have been no need to include the "reasonably necessary" exception to the statute, or at least the exception would not have been defined in such relaxed terms as "reasonably" necessary. Acceptance of Slope County's argu-

ment by this court would place an interpretation of the word "necessity" in accordance with exacting degrees such as "absolute," "strict," or "indispensable," instead of the more relaxed degree of reasonableness, as called for by the language of the statute. This we decline to do.

The record points out there are certain advantages enjoyed by a coal mining company which owns the surface estate of lands it intends to mine. Such ownership allows the company to proceed with the development of coal and avoid either the acquisition of the surface owner's consent to mine, or a possible lengthy and costly proceeding to obtain a court order granting permission to the Public Service Commission to issue a permit to surface mine. Ownership avoids disputes with surface owners and eliminates the possible extraction by surface owners of so-called unreasonable economic damages from the coal company. It also allows storage, handling and processing facilities located on such lands to be used in connection with coal mined from other lands leased but not owned by the coal company. This evidence adequately demonstrates the ownership of land is useful, suitable, and convenient, and thus reasonably necessary, in the conduct of coal mining operations.

We now turn to the more specific question of whether or not ownership of the Slope County land was reasonably necessary in Consolidation's coal mining operations. As we stated previously, the necessity of a land's use may be one which arises in the future, as determined by the purpose for which the land was acquired, if the land is being held for that purpose, and if it will be necessary when actually used.

The land in question was acquired by Consolidation Coal Company as the result of a merger with Truax-Traer Coal Company. There is no evidence in the record indicating the purpose of the original acquisition by Truax-Traer. During oral argument it was agreed the land in question was coal land. Because Slope County failed to present evidence to meet the burden of

proving otherwise, we must assume the land was acquired for coal mining purposes.

Because we have previously discussed the question of whether or not the land will be reasonably necessary when actually used for coal mining, our final analysis is whether or not Consolidation Coal Company is holding the land for coal mining purposes. The district court found that despite the length of time the land had been held by Consolidation, the company was holding the land for coal mining purposes. The record discloses, and the district court concluded, substantial lead time is necessary for exploration, development of plans, acquisition of mineral interests and mining permits, construction of support facilities, and acquisition of equipment, in addition to other requirements necessary in the development of coal producing lands. Although it was stipulated that Consolidation had no firm dates for the development of the land in question, exploration activities in the form of test drillings were conducted on both the land owned by Consolidation and on surrounding properties. In addition, Consolidation had undertaken a major property rights acquisition program in the area of the subject premises which is necessary to assemble an efficient, economical coal surface mining unit.

The record also discloses that although the land owned by Consolidation was leased to an area farmer for agricultural purposes, the lease provided that it was subject to cancellation should Consolidation determine to mine the premises for coal. The lease provided for rents based upon the property taxes paid on the property in the amount of $2,690, or approximately $3.73 per acre. The lease also reserved to Consolidation the right to enter the premises for purposes of exploring and testing for coal, oil, gas, or other minerals and performing any acts incidental to the preparation of the land for mining and production of coal or other minerals.

■ On the basis of the above evidence, we conclude there was substantial evidence supporting the determination that Consolidation Coal Company was holding the sub-ject premises for purposes of its coal mining operations and consequently the finding of the district court that such premises were reasonably necessary in the conduct of Consolidation's business was not clearly erroneous under Rule 52(a), NDRCivP.

We are aware that under our interpretation of § 10–06–03, NDCC, it may be possible for companies like Consolidation to acquire and hold agricultural lands for purposes such as speculation under the guise of holding the lands in the conduct of their business. We are also aware that such acquisition may put those companies in direct competition with family farmers wishing to purchase the same agricultural property. We, however, must make our decision on the basis of the record before us and the appropriate standard of review. Although we have concluded the property in question is reasonably necessary in the conduct of Consolidation's business, no doubt closer cases will arise in the future. If cases such as the present one arise in the future, the issue of reasonable necessity must be dealt with on a case-by-case basis through an examination of the evidence presented. If the opportunity for abuse exists under Ch. 10–06, NDCC, it is more appropriately corrected by the Legislature than by attempts on the part of this court to place an unwarranted construction on the statute.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.