# JOSEPH LANGER v. W. H. C. GOODE.

## (131 N. W. 258.)

**Statutory Construction — Noxious Weeds — Action — Damages.**

1. Section 2086 of the Revised Codes of 1905 construed and held that no such duty devolves upon any person to destroy such noxious weeds as wild mustard upon the land he owns or occupies, as will make him liable for damages for failure to destroy until after the county commissioners have prescribed the time and manner of destruction. As to whether an action would lie after the commissioners have acted, not determined.

**Statutory Construction — Words and Phrases.**

2. The expression, "rights of another," in the maxim set forth in § 6661 of the Revised Codes of 1905, means legal rights, and is not broad enough to include all rights determined by our moral and ethical standards.

Opinion filed April 21, 1911.

Appeal from District Court, Cass county; *Pollock, J.*

Action by Joseph Langer, as plaintiff, against W. H. C. Goode, as defendant. From an order sustaining a demurrer to the complaint, plaintiff appeals.

Affirmed.

*J. F. Callahan* and *S. B. Bartlett,* for appellant.

*Smith Stimmel* and *Pollock & Pollock,* for respondent.

BURR, District Judge. This is an action in which the plaintiff seeks to recover from the defendant damages alleged to have accrued to him by reason of the plaintiff's alleged neglect to destroy wild mustard growing on his farm. The complaint, omitting the formal parts, is as follows: "That at all times hereinafter mentioned the plaintiff was the owner and in possession of certain tracts of land situated in the county of Cass, state of North Dakota, described as follows: [Here setting forth description.]

"2. That at all times hereinafter mentioned, the defendant was the owner and in possession of certain tracts of land situated in Cass county, North Dakota, and described as follows: [Here follows description

of the land adjacent and contiguous to the land described in paragraph. 1.]

"That during the year 1908 the defendant, contrary to law and rights of the plaintiff herein, permitted certain noxious weeds, to wit,. wild mustard, to grow and bear seed upon the premises owned by him. and described in paragraph 2 of this complaint.

"That said seed so grown on the premises of the defendant, as hereinbefore set forth, was, during the years 1908 and 1909, blown on and across the land owned by this plaintiff, and described in paragraph 1 herein, and polluted and rendered foul said land and the crop grown thereon during the year 1909, and caused this plaintiff labor and expense in attempting to eradicate the same, and damaged the real property of this plaintiff, above described; all of which damage amounts; to the sum of $1,500, no part of which has been paid, and no demand has been made for the same.

"Wherefore, the plaintiff demands judgment, etc."

To this complaint the defendant demurred upon the grounds "that it appears upon the face of said complaint that the same does not state facts sufficient to constitute a cause of action." The proposition involved being argued before the trial court, said court sustained the demurrer, and from the order sustaining said demurrer the plaintiff has appealed to this court.

The respondent in his brief raises the question as to how the plaintiff could know, "how can anybody know," that the wind blew the mustard seed from the defendant's land upon plaintiff's land, citing authority to the effect that "the wind bloweth where it listeth, and thou canst hear the sound thereof, but canst not tell whence it cometh or whither it goeth." This objection, however, would more properly be addressed to the character of evidence which may be introduced in proof of damage, if such a cause of action be maintainable, but is not properly before us on the demurrer, nor should we concern ourselves with the proposition; for, as the same authority has said, "sufficient unto the day is the evil thereof."

The question presented to us on the demurrer involves the construction of §§ 2086, 2088, and 2089 of the Revised Codes of 1905. The appellant in this case stands squarely for the rights which he claims he has under these sections, alleging that the defendant is guilty of a breach of duty imposed upon him by the statute, and that because of

said breach appellant has been damaged, invoking the rule in the law of torts, that where a duty is imposed upon a person by a statute which is designed primarily for the protection of other people, he is liable in damages to any person for whose protection this duty is imposed, resulting from neglect to perform any duty, where the damages sought to be recovered are of the character which the statute is designed to prevent.

It will be noticed that the complaint in this case does not allege that the board of county commissioners for the county of Cass, at any time during the years covered by the complaint, prescribed the time and manner of destroying noxious weeds, as provided for by § 2086, and it is expressly admitted by the appellant himself in his brief that the said board did not give the required notice. It is argued by the appellant that the defendant herein owed a duty to the plaintiff irrespective of any action of the board of county commissioners, and that, independent of the fact that the board may have failed to perform the duty imposed by the statute upon the defendant, the defendant had no right to permit a use of his property in such a way as would injure appellant. It is argued by the appellant that the act of the defendant was unlawful; that is, that it was unlawful for the defendant to omit to destroy the noxious weeds; and he cites, as ground for maintaining his action, § 6556 of the Code, which says: "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." It becomes necessary for us, therefore, to determine whether or not, under the facts in this case, such a duty as hereinbefore referred to did devolve upon the defendant for the benefit of the appellant. At the outset it will be noticed that there is a difference between omitting to do something which is required to be done by the statute, and the doing of something which is prohibited by the statute. It is not contended that where a person fails to destroy noxious weeds upon any lands which he owned or occupied, there is a penalty prescribed by statute for such failure, so as to make the failure a criminal offense. Section 8760 of the Revised Codes makes it a crime to do any act the performance of which is prohibited by statute in cases where no penalty for the violation of the statute is imposed under any statute, but this section cannot be con-

strued so as to make it a criminal offense to fail to do an act which may be required by statute.

Section 6661 says: "One must so use his own rights as not to infringe upon the rights of another." That is but one of the many translations of the old maxims, *Sic utere tuo at alienum non lædas.* These maxims are merely aids to the construction, and, as Judge Engerud pointed out in Carroll v. Rye Twp. 13 N. D. 458–462, 101 N. W. 894, the damages recoverable under such maxim are not damages as for every injury, but such damages only for which the law gives redress; and, as counsel in Jeffries v. Williams, 5 Exch. 792, 20 L. J. Exch. N. S. 14, 3 Mor. Min. Rep 645, suggests, the injury guarded against is the injury to the rights of others, which means legal rights; otherwise, the more complicated civilization becomes, the more difficult it would be for a man to use or enjoy the use of his own property. The English courts appear to have carried the application of this maxim for the benefit of "others" to a much greater length than the American courts, and, in fact, all or almost all of our American writers agree that the English ruling cases, such as Fletcher v. Rylands, 37 L. J. Exch. N. S. 161, 1 Eng. Rul. Cas. 235, 6 Mor. Min. Rep. 129, have not been adopted as authority in our courts. The duty which a man owes to his neighbor in respect to his neighbor's legal rights widens in accordance with the beliefs and the age of the application of the rule. As we advance in civilization, and the principles of Christianity become more widespread,—for this maxim is but an application of Christian principles,—the duty which one man owes to another, no doubt, will enlarge and increase, and with this enlargement our legal system must keep pace; yet it must be conceded that almost invariably the highest, most delicate, and finest developed sense of duty and the best system of ethics have not been translated into the law of the land, and it is principally by change in legislation that the wornout legal ethics must be supplanted by the system that best expresses the moral genius of civilization.

How far, then, does the statute go in prescribing a duty to destroy noxious weeds and permitting recovery of damages for failure so to do? The appellant concedes that no such liability was incurred at common law, and relies, as he says, "upon the plain letter of the statute," which must be construed, of course, in the light of the maxim hereinbefore quoted. It is not claimed that the action of the defendant

21 N. D.—30.

in permitting noxious weeds to grow amounts to a public nuisance, as defined in §§ 9027 and 9029, of the Revised Codes of 1905.   In Fisher v. Clark, 41 Barb. 329, the court says:   "The right of everyone to use his own property as he pleases for all the purposes to which such property is usually applied is unlimited and unqualified up to the point where the   .   .   .   use becomes a nuisance."   In this case cited, the court states the facts as follows:   "The parties were farmers, occupying adjoining farms.   Each had a flock of sheep; those of the defendant had a contagious disease known as the scab, and the fact of the disease and its character were well known to the defendant.   The defendant sent word to the plaintiff that he intended to turn this flock of diseased sheep in his own field next to the field of the plaintiff, where the sheep of the plaintiff were pasturing.   The plaintiff thereupon called on him and told him he must not do it, insisting that he had no right so to do, and the result of the interview was that the defendant promised the plaintiff that he would not turn said diseased sheep into the lot next to the plaintiff.   Disregarding this agreement, and without notice or the knowledge of the plaintiff, the defendant did turn his sheep into a lot adjoining where the plaintiff's sheep were, and only separated by a common rail fence.   The division fence belonged to the plaintiff to repair, and was a good fence.   The sheep of the defendant got into the plaintiff's field and mingled with his sheep, no evidence to show how or by whose fault.   They were in several times; once the plaintiff found a rail shoved aside where they might have passed, but he had no knowledge that they did.   At the other times it does not appear that there was any defect in the fence, or how they got in.   The defendant also had, with his flock of diseased sheep, some lambs so small that an ordinary or common rail fence would not stop them, and they were frequently in the plaintiff's field with his sheep. That the disease was a contagious one which would be communicated either by the mingling of the sheep, or by running side by side separated only by a common rail fence, appeared fully by the evidence.   The plaintiff's sheep became diseased and largely damaged."

The defendant set up in his answer that the plaintiff was guilty of contributory negligence in not keeping his fence in repair.   The court, however, determined the case entirely upon the broad principle "that every man has absolute right to use his own property as he pleases, for all purposes to which such property is usually applied," and disregard-

ed entirely the question of contributory negligence of the plaintiff, and also the promise of the defendant not to put the sheep in the lot. At the present day it may well be doubted whether a court would disregard the promise which the defendant made the plaintiff in this case, independent of the fact that we have our statutes with reference to contagious diseases in animals. But in the case cited there was no claim that the plaintiff was entitled to recover under the provisions of any statute,—he was trying to recover under the general doctrine of the duty which one man owed to another.

In Giles v. Walker, L. R. 24 Q. B. Div. 656, "the defendant, a farmer, occupied land which had originally been forest land, but which had some years prior to 1883, when the defendant's occupation of it commenced, been brought into cultivation by the then occupier. The forest land prior to cultivation did not bear thistles; but immediately upon its being cultivated thistles sprang up all over it. The defendant neglected to mow the thistles periodically so as to prevent them from seeding, and in the years 1887 and 1888 there were thousands of thistles on his land in full seed. The consequence was that the thistle seeds were blown by the wind in large quantities into the adjoining land of the plaintiff, where they took root and did damage." The plaintiff claimed that the defendant was negligent in his duty toward him, and sought to recover damages for failure to prevent these thistles from going to seed. Lord Chief Justice Coleridge says: "I never heard of such an action as this. There can be no duty as between adjoining occupiers to cut the thistles which are the natural growth of the soil. The appeal must be allowed."

Appellant cites State v. Dawson, 38 Ind. App. 483, 78 N. E. 352. Here the defendant was prosecuted for violating the following statute: "Any person who shall knowingly allow Canada thistle or thistles to grow and mature, or shall allow any Canada thistle or thistles to grow until they or any of them become of the length of 6 inches, measured from the surface of the soil to the end or tip of the stem above the surface of the ground, upon his, her, or their land, or upon any land which they shall occupy or have under their charge and control . . . shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined, etc." It will be noticed that there is a vast difference between this statute of Indiana and the statute upon which the appellant relies. The Indiana statute makes it a criminal offense to permit

the growth of the Canada thistle in violation of the provisions of the statute, and prescribes penalty therefor, but the duty claimed by the appellant under our statute is not such for the violation of which any penalty has been attached, nor does the statute in any way make it a misdemeanor. It is true that § 5366 of our Code says: "That is not lawful which is (1) contrary to an express provision of law," etc. Is the failure of the defendant to destroy the wild mustard as charged in the complaint an unlawful act? Section 2086 says: "Each person shall destroy upon all lands which he shall own or occupy, all weeds of the kind known as . . . mustard . . . at such time and in such manner as shall effectually prevent their bearing seed." Upon whom rests the responsibility of prescribing the time and manner of such destruction? Subsequently, in the same section, the statute says: "The time and manner of destroying such weeds shall be prescribed by the board of county commissioners," etc. Is this duty, placed upon the county commissioners, the foundation for the action of the road supervisor only, as prescribed in § 2088, or is it the general provision which must be complied with before liability attaches to anyone, in any way affected by the requirements of this statute? It would appear from a correct reading of § 2088 that this section contemplates that the board of county commissioners shall fix the time and the manner of destruction for everyone who has the duty of destroying weeds, and, where the owner or occupier of the land fails to destroy within the time and according to the manner prescribed, then the duty of the road supervisor begins. In other words, while the law requires each person to destroy upon all lands which he shall own or occupy all wild mustard, at such time and in such manner as shall effectually prevent the bearing of seed, it does not contemplate that the man shall be a law unto himself, but places upon the county commissioners the duty of prescribing the time and manner of destruction, in order to have a uniformity in time and method, prescribed by those who presumably would be removed from any selfish desire to save time and money and labor. Therefore, no duty devolves upon anyone to destroy these noxious weeds until the board of county commissioners prescribes the time and manner of destruction. It being conceded that such action was never taken by the board, then no duty devolved upon the defendant, and in such a case his failure to destroy the weeds would not be

an unlawful act or omission according to the definition of "unlawful" set forth in § 5366.

Counsel for the appellant urges with great force and earnestness that, on account of the peculiar conditions in this state, "where the general sources of wealth are the crops that are yearly gleaned from the soil, and where the frugal and careful husbandman is the greatest asset to a community;" and, further, that it is not difficult to understand why the legislature should enact a law for the purpose of prohibiting the individual from damaging his neighbor's crops or lands as a result of his own indolence, or negligence; or that they should say to him in substance, you shall so farm your land as not to injure the crops or land of your neighbor, and if you do so injure them, you shall answer in damages. This would have force if such were the purpose of the legislature, but is such failure, as alleged, negligence? There is no negligence where there is no violation of a legal duty, and where there is no duty the "other" has no such right as is contemplated by the maxim quoted.

To give to this statute the interpretation which the appellant claims, would open a vast field of litigation, destroy the peace and harmony of communities, and set "every man's hand against his neighbor." The construction that will best promote the general welfare is to be preferred. Stern v. Fargo, 18 N. D. 289, 301, 26 L.R.A. (N.S.) 665, 122 N. W. 403. If the legislature intended to make one liable in such a case as this, it would have been an easy matter to express such an intention in plain, unequivocal language. There is a vast difference between injuries which result in cases where a man brings upon his own land great quantities of anything which, if it escaped from his land, would injure his neighbor, and a case where, under the law of nature, noxious weeds grow upon a man's land in spite of his wish, desire, and effort. So far as we can ascertain, this question has not been raised in our courts, and apparently the idea that a man is not liable under the state of facts in this case has been acquiesced in generally. It is true that the mere acquiescence in such an idea, and the mere assumption on the part of either the bench or the bar, or the public in general, that a statute has a certain meaning, does not make it the law, but, as is said in Willis v. Mabon (Willis v. St. Paul Sanitation Co.) 48 Minn. 140, 16 L.R.A. 281, 31 Am. St. Rep. 626, 50 N. W. 1110, "a construction which has for a third of a century been

accepted by everyone as so obviously correct as never to have been questioned or doubted is much more likely to be right, than a newly discovered one, suggested at this late day by the emergencies of present litigation."

Where the public in general has taken for granted that a certain construction of the law is the law, and where a change in construction as contemplated would be fraught with grave consequences, this court would hesitate to place a new construction upon the law, unless it was clear that the construction desired is the only logical one which the law will bear. But, independent of this, it is clear to our mind that there is no duty resting upon the owner or occupier of the land until the proper authorities have prescribed the time and manner of destruction.

The question as to whether a man would be liable in damages for failure to perform a duty even in case where the board of county commissioners prescribed the time and manner of destruction, as required by law, is not before us now, and need not be considered here.

For the reasons given, we believe that the demurrer was properly sustained, and the judgment of the lower court is therefore affirmed.

HON. A. G. BURR, Judge of the Ninth Judicial District, sitting at the request of the court.