IN RE ESTATE OF IRWIN.

[Cite as In re Estate of Irwin (1969), 25 Ohio Misc. 151.]

(No. 63808—Decided March 4, 1969.)

Probate Division, Court of Common Pleas of Columbiana County.

*Mr. Francis H. Lang,* for the Estate and June Williamson.

*Mr. J. E. Bauknecht,* for Betty Dunn, individually.

*Mr. Joseph W. C. Cooper,* representing, Sara, Fred and Thomas Adam.

*Messrs. Vodrey & Shay, Mr. Jackman Vodrey,* for James and Frank Patterson Irwin.

*Mr. Lawrence W. Smith,* for E. Liverpool City Hospital.

*Messrs. Harrington, Huxley & Smith,* for James and Frank Patterson Irwin.

TOBIN, J. This matter came on to be heard on the application of June A. Williamson, as executrix of the estate of Francis D. Irwin, deceased, for construction of the will and determination of the heirs, if any, if the estate passed as intestate property. The court has already determined the second and third questions asked on the determination

of the will which involves Item 3 and Item 8 of the Will. The sole question remaining to be determined is that under Item 9, which states: "Any cash money left in my estate will be divided as follows: Thomas Adam, Wilmington, N. C.—25%; C. Fred Adam, Augusta, Ga.—25%; Sarah Adam, 129 Shangri La, Fla.—25%; Frank P. Irwin, Liberty St., Hubbard, O.—12½%; Robert Carnahan, % Carnahan Drug, Newell, W. Va.—12½%. The legatees are the heirs-at-law of Francis D. Irwin. Also, the question has been raised from both the application and the answer, whether the bequest to Betty Dunn, under Item 4 of the will, in the amount of $2,000.00, is invalid by virtue of the fact her name appears as a witness to the will.

The court makes the following findings of fact:

That Francis D. Irvin died on the 19th day of January, 1968, that he died without wife, father or mother, all of whom had predeceased him, or children. The court further finds as a fact that the will in question was written on the 28th day of October, 1966, approximately one year after the death of his wife. That it was written on the same day that the said Francis D. Irwin went into East Liverpool City Hospital to be operated upon. That he had attempted to obtain his lawyer and was unable to do so and therefore wrote this will himself by dictating it in part, and some of it written by himself in his own handwriting, to his office secretary, June Williamson, who is also the executrix of this estate.

The court further finds that he had been very close to Sara Adam, his sister-in-law and her two sons, Thomas Adam, and Fred Adam. That in the later years he had been on friendly terms with his blood nephew, Frank P. Irwin, but not on good terms with his blood nephew, James P. Irwin. The court also finds that he had the will typed in his office by June Williamson and signed the same, signature was witnessed by William H. Bricker and Mrs. Betty E. Dunn.

The court further finds that Doctor Irwin died as a suicide on the 19th day of January, 1968; or some 16 months or better after the execution of this will. The court also finds that in making the present will he had in his immediate

possession his former will which had been drawn for him by attorney Lang, and to which he referred to from time to time. The exact contents of said will were not permitted to be revealed but the court permitted to be divulged that it contained a residuary clause.

The court further finds as a fact that the decedent had seen his attorney Francis Lang on many occasions and had been advised by his said attorney he should come in and permit him, the attorney, to redraft this will, but that he never did so.

The court further finds that in addition to his being a dentist and a college educated man, he was an astute business man and accumulated a great portion of his wealth from investments of land in the Lake Marwin Corporation, which he later sold and for which he had received a note and mortgage.

The court also finds from the inventory and appraisement that the said estate consisted of household effects, etc., as found in schedule A in the amount of $11,400.00; that in schedule B, there was $160.00 in specie and currency only. In schedule C, to wit, stocks, bonds, and securities in the sum of $2,000.00; in schedule D, accounts and debts receivable $150,294.34; this latter consists in the main of $15,000.00 worth of shares W. P. N. B. savings bonds; note and mortgage on the Lake Marwin Corporation, dated July 16, 1965, originally $125,000.00 but at the time of his death $89,461.53; and other notes, accounts and claims listed in schedule C and D of the inventory to make up the amount of $150,294.34. Also included in schedule D were various savings accounts in various banks, uncashed checks and various time deposits in the same banks. There was also as part of the estate, real estate in the amount of $24,700.00 making a total estate of $188,594.34.

### Decision

The court finds that Frank Patterson Irwin and James Irwin are the closest blood nephews to the said Francis D. Irwin, and that if he had died intestate would have been the nearest heirs-at-law to inherit his property in equal shares.

The court further finds that the said Betty A. Dunn did

sign said will in the capacity as a witness to the signature of Francis D. Irwin. However the will is not a will until it has been offered and admitted to probate. Until that time it is merely an instrument signed and witnessed and of no legal effect. A person is a witness to the will when called upon by the court to testify to the will and to establish its authenticity. In the instant case, Mrs. Betty A. Dunn was not called upon at any time to testify on this will. In addition to William Bricker to offer his testimony, independent testimony of Mr. and Mrs. Larkins was offered as to their personal knowledge as to the authenticity of the signature of Doctor Irwin, and it was duly admitted and probated.

The time has now passed to question or contest the will and it is the duly admitted will and the disposition of the estate is governed by its terms. Therefore the prohibition in R. C. 2107.15 does not apply and Betty A. Dunn is entitled to her devise granted to her in the will of the late Doctor Irwin. The statute states ''and the will cannot be proved except by his testimony.'' Said will was proved without her testimony.

The court now comes to Item 9 of the will: ''Any cash money left in my estate will be divided as follows: Thomas Adam, Wilmington, D. C.—25%; C. Fred Adam, Augusta, Ga.,—25%; Sarah Adam, 129 Shangri La, Largo, Fla.,—25%; Frank P. Irwin, Liberty St., Hubbard, Ohio—12½%; Robert Carnahan, % Carnahan Drug, Newell, W. Va.—12½%.'' The only question is, what did Francis Irwin mean when he said ''any cash money left in my estate.'' Except for Item 10, appointing the executrix, this is the last item in the will and no further items are in the will making any disposition of the property.

It goes without the necessity of quoting a large amount of citations, that the court must determine the intent of the testator, which would be binding. The court must determine this intent from the four corners of the entire will and not from any one approach or use of terminology. There is a presumption to find for the disposition by testate means and against intestacy if a will exists. In the instant case, Dr. Irwin made specific bequests of certain

articles, to wit, Lotus ware, his automobiles, his tape recorder, in Items 2, 3 and 5 of the will. He made a specific bequest of his home property together with its usual contents, to his office secretary and long-time friend, June Williamson. The court has already ruled on this bequest and what it means.

In the language of the ordinary layman any use of the word "cash money" means specie, and in this instance the amount of $160.00. This is argued by Frank Patterson Irwin and James Irwin, more particularly, James Irwin, to be the entire meaning. Frank Irwin does admit that cash money might be bank accounts. To accept the reasoning of Frank Irwin and James Irwin would mean that the court would have to find that Francis D. Irwin had a desire to make some disposition of his estate after the death of his wife and his mother, the two persons closest to him; that he made a very complicated division of the same in Item 9, to dispose of only $160.00; that in his anxiety to make testamentary disposition of his property before entering into the hospital, so much in a hurry that he could not wait for an attorney, that he deliberately attempted to write a will and left a vast bulk of his estate undisposed of in his will. The court finds from the reading of the will, together with the testimony offered that this was not his intention and the court rejects the theory of Frank P. Irwin and James Irwin.

The court also has in mind that the testator was a business man. Dealing in business items such as certificates of deposit, bonds, notes due from people, travelers checks and other matters in his estate, together with stocks and bonds and other matters would be the same as cash money, to wit assets easily and quickly converted into specie that could be used as cash money.

Therefore, the court finds that the use of the terminology "cash money" the decedent intended to leave everything in schedule B., C., and D., in accordance to the terms of said Item 9. There are so many authorities to be found to indicate that this interpretation by the court is well founded:

*Gillen* v. *Campbell,* 34 Ohio St. 352; *In re: Merick's*

*Estate,* 82 N. Y. S. 2d 778;.*In re Ingham,* 93 A. L. R. 510.

Therefore, the court finds that Item 9 leaves to and does include all those parts of his estate found in schedule B., C., and D. The court however, does find that it does not cover the real estate, nor does it cover any of the personal goods and chattels in schedule A. To the extent as to schedules A. and B. except for that property which he had disposed of in other parts of the will on which the court has already ruled, the court finds they were not specifically devised under the terms of the will, that the term "cash money" does not include that and that he died intestate, therefore his closest and only heirs, Frank and James Irwin would inherit those items and real estate in schedules A. and B. not specifically devised in other parts of the will.

*Judgment accordingly.*