## CITY OF NEWARK *v.* GARFIELD DEVELOPMENT CORPORATION.

(No. 85-CRB-1009—Decided January 24, 1986.)

Licking County Municipal Court.

*Bill L. Slocum,* assistant law director, for plaintiff.

*Jones, Norpell, List, Miller & Howarth* and *Rodney L. Howarth,* for defendant.

FROST, J. This matter was commenced by the filing of a criminal complaint against the defendant corporation as the owner of certain real estate situated within the city of Newark, Ohio. In the criminal complaint it is alleged that the defendant, Garfield Development Corp. has violated city of Newark Ordinance 81-72 which is the ordinance which enacted the Property Maintenance Code of the city of Newark.

Specifically, the complaint states that the defendant did unlawfully:

"Within the 30-day period allowed for compliance, failed to comply with an order to cut and remove weeds from property located at 730 Garfield Avenue, Newark, Ohio, said order made pursuant to the Property Maintenance Code of the City of Newark, Ohio."

Failure to comply with the ordinance in question subjects the defendant to a possible penalty of no less than a fifty dollar fine and no more than a five hundred dollar fine and possible incarceration not to exceed six months.

The action originated when the Building Code Administration issued a letter to the defendant advising the defendant that there were located on property owned by the defendant certain noxious weeds and requiring the defendant to remove the weeds within a prescribed period of time. The defendant failed to comply with the order and the criminal complaint was subsequently filed.

At the trial the court heard evidence concerning the facts herein. Several residents of the area testified on behalf of the plaintiff that before the defendant became the owner of the property in question, the vacant field had been mowed in a proper manner. They further testified that since the defendant purchased the property certain areas of the vacant land have been allowed to grow uncontrolled. Dandelions, goldenrod, and thistle have flourished in these certain areas. A few of the witnesses complained that the weeds were objectionable from the standpoint of pollen causing sneezing, breathing problems, and headaches. No medical testimony was presented to support these claims. Most of the complaints focused on the unsightliness of the areas and the fact that the uncontrolled growth of weeds spread additional weed growths into the neighbors' yards and gardens.

The Public Health Sanitarian, the Building Inspector and the Administrator of the Building Code Authority all testified as to the condition of the premises and what they defined as a "noxious weed." The definition of a

"weed" most commonly used at trial was "unintentional plants whose bad qualities outweigh their good qualities." The bad qualities consisted of pollen and ground cover which allowed unwanted rodents and insects to live and multiply.

The defendant presented evidence from an eminently qualified horticulturalist who testified that the test for what are and what are not "weeds" was largely subjective. He stated that those plants found to be objectionable to some might not be found to be objectionable to others and, in fact, could be found by some to be even profitable. In that regard the defendant introduced a dried plant and floral arrangement consisting solely of plants taken from the property in question.

The president of the corporation testified that the property was purchased for future building development and that he had harvested hay from the field for sale. He testified that the complaints largely concerned areas around some building materials stored on the location.

It is the position of the plaintiff that the defendant has violated the noxious weed ordinance in question and that the ordinance is a valid exercise of the police powers of the municipality. The defendant complains that the ordinance allows a subjective test to be applied to this criminal ordinance with regard to the determination of what is or is not a noxious weed and is therefore violative of the constitutional guarantee against the taking of property without due process of law.

The noxious weed section of the Property Maintenance Code states as follows:

"NOXIOUS WEEDS: All areas shall be kept free from weeds or plant growth which are noxious or detrimental to the public health and welfare or a public nuisance as defined in Article 2."

A public nuisance as referred to in the above-stated section and as it applies to this case is defined by the Property Maintenance Code as follows:

"PUBLIC NUISANCE: Includes the following: any premises which are unsanitary, or which are littered with rubbish or garbage, or which have an uncontrolled growth of weeds."

It is helpful to study the evolution of the modern weed control statutes to determine the issues presented herein. At common law, the rule was established that the owners of real property were not liable for the spread of noxious weeds onto the land of others unless it could be shown that the offending landowner had acted in a wilful or negligent manner. This was true even where the weeds were not natural growth but were intentionally planted on the land. The English common-law doctrine as established in the case of *Fletcher* v. *Rylands* (1866), Law Rep. 1 Exch. 265, 3 H.L. 330, whereby absolute liability attached to any person who brought onto his land a thing which, if it escaped, was bound to create or inflict injury on another, was not extended to impose a duty upon landowners to control weeds or other natural growth. See *Giles* v. *Walker* (1890), 24 Q.B.D. 656; *Ponting* v. *Noakes* (1894), 2 Q.B. 281. The American courts when faced with this problem found liability to attach only where the landowner's actions were wilful or negligent even though the acts of the landowner interfered with the use of an adjoining property. See *Harndon* v. *Stultz* (1904), 124 Iowa 734, 100 N.W. 851.

Due in large measure from pressure applied by farming communities in agriculturally based states, legislatures began enacting statutes which modified the common law and provided protection to the agricultural interests. These laws create an affirmative duty on landowners to prevent the spread of noxious weeds and delegate authority to localities to enforce the provisions. The legislative enactments generally all con-

tain provisions which: (1) define the type of noxious weed or other vegetation subject to regulation; (2) delegate to local boards or officials the power to enforce the provisions; (3) prescribe the duty of the landowner; and (4) provide a procedure for giving notice to the offending party. See Agricultural Law Digest, Chapter 11, Liability for Spread of Weeds, Section 11.03(1).

As might be expected, these statutes were initially challenged on the grounds of constitutionality and most were found to be a valid exercise of the state's police powers. See *Chicago, Terre Haute & Southeastern Ry.* v. *Anderson* (1916), 242 U.S. 283; *State* v. *Boehm* (1904), 92 Minn. 374, 100 N.W. 95; *Missouri, K. & T. Ry. of Texas* v. *Forrest* (Tex. Civ. App. 1912), 148 S.W. 1176; *St. Louis* v. *Galt* (1903), 179 Mo. 8, 77 S.W. 876; *Chaput* v. *Demars* (Kan. 1926), 243 P. 311; *Gray* v. *Thone* (1923), 196 Iowa 532, 194 N.W. 961. Such regulations have been held not to violate the constitutional guarantee against the taking of property without just compensation. Further, the courts have found that there is no violation of due process where the legislative authority declares certain plants to be detrimental to agricultural interests and classifies those plants as noxious vegetation where the law provided adequate notice.

However, the police power of the state in this area is not without some limitation. As was stated by the Virginia Supreme Court of Appeals in *Bowman* v. *Virginia State Entomologist* (1920), 128 Va. 351, 374, 105 S.E. 141, 149, a case involving pest control:

" 'Statutes providing for the summary destruction of vegetation infected with contagious pests without any preliminary judicial inquiry and without compensation to the owner for the resulting loss, are perfectly constitutional, so long as they themselves define what constitutes a nuisance, and there is a right to a subsequent judicial review of the action of the administrative officer.' "

Further, an ordinance declaring a particular operation to be a nuisance which is based solely on aesthetic considerations is an unconstitutional exercise of police power. See *Defiance* v. *Killion* (1962), 116 Ohio App. 60 [21 O.O.2d 301]; *Deshler* v. *Hoops* (C.P. 1963), 93 Ohio Law Abs. 335 [26 O.O.2d 30].

That which appears to be contained without exception in all weed control legislation but which is lacking in the ordinance in question is the definition of the particular vegetation which is sought to be controlled or a mechanism by which the particular vegetation is designated to be noxious and therefore subject to governmental control. The various state statutes which this court has reviewed all declare in horticulturally correct terms the plants or vegetation which are noxious. Most states, such as in Ohio, delegate that authority to the Department of Agriculture and establish due process guidelines for the formulation of the same. It would also appear to this court that most recently enacted state statutes follow, as a model, the Federal Noxious Weeds Act of 1974.

Statutes and ordinances requiring the removal or destruction of noxious weeds, being in derogation of the common law, should be construed strictly and all ambiguous expressions or doubtful points resolved in favor of the landowner. See *Langer* v. *Goode* (1911), 21 N.D. 462, 131 N.W. 258. Ohio's statutes pertaining to weed control pass this strict test. In Ohio many provisions have been enacted dealing with noxious weeds, a few of which are R.C. 5579.04 (dealing with the destruction of noxious weeds along highways), R.C. 731.51 (dealing with noxious weeds inside a municipality), and R.C. 971.33 (concerning noxious weeds adjacent to a partition fence). These are all legitimate expressions of the state's police power.

However, in so legislating, the state further provided the due process mechanism whereby noxious weeds are classified. R.C. 907.10(B)(2) delegates to the Director of Agriculture the authority to establish primary and secondary noxious weed lists. These lists are established by following the due process requirements of notice and hearings as set forth in R.C. Chapter 119. Ohio Adm. Code Chapter 901:5-31 contains the list of prohibited and secondary noxious weeds as defined by the Director of Agriculture. The ordinance in question provides for no such prior determination and this court therefore finds the ordinance to be constitutionally defective.

In so doing this court is fully aware of the fact that every possible presumption is to be indulged in favor of the validity of the ordinance passed. Further, this court does not question the good faith of the plaintiff in the passage of the ordinance in question. The altruistic motives of the plaintiff are quite apparent. However, it seems clear to this court to be utterly repugnant to our system of laws to punish a person for an act, the criminality of which depends not on any standard erected by the law which could be known to the defendant in advance, but one erected by the judge or jury after the trial has been completed.

For the foregoing reasons, the court finds in favor of the defendant and declares Newark City Ordinance 81-72, Section 301.6, to be an unconstitutional delegation of police powers insofar as it does not provide for a constitutionally permissible prior determination or definition of noxious weeds.

*Complaint dismissed.*